# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEVONNE REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | Case No. 09 C 5581 |
| FRANK SARABIA and J.E. WRIGLEY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Devonne Reed brings this action pursuant to 42 U.S.C. § 1983 and 1988 against two Chicago police officers, alleging they used excessive force (spraying mace on his bare genital area and repeatedly beating him with a police baton) pursuant to his lawful arrest. Those officers, Frank Sarabia and J.E. Wrigley, now move for summary judgment, arguing that the force they used to detain Mr. Reed was reasonable as a matter of law because Mr. Reed evaded an earlier arrest and was previously seen with a weapon. For the reasons stated below, the court denies Defendants' Motion for Summary Judgment.

### I. BACKGROUND

The following facts are undisputed unless otherwise indicated.

On September 6, 2007, a Chicago Police narcotic surveillance team observed Devonne Reed selling a substance later identified as cocaine to at least three pedestrian customers in a vacant lot on the 3100 block of W. Roosevelt Road in Chicago. (Defs. Rule 56.1(a)(3) Statement (hereinafter "Defs. St.") ¶¶ 12-13.) The surveillance team also observed Mr. Reed pulling a black handgun from his waistband and placing it in the front passenger area of a nearby green Chevrolet. (Defs. St. ¶ 15.)

The surveillance team then directed Chicago Police Officers Frank Sarabia and J.E. Wrigley ("defendant officers") to arrest Mr. Reed. (Defs. St. ¶ 3.) Defendant officers handcuffed Mr. Reed and placed him in the backseat of an unlocked police vehicle. (Defs. St. ¶ 4.) During that arrest (referenced hereinafter as the "first arrest"), Mr. Reed did not have any drugs or weapons on his person. (Pl. Rule 56.1(b)(3) Statement (hereinafter "Pl. St.") ¶ 2.)

After placing Mr. Reed in the backseat of the police vehicle, defendant officers talked and inspected the green Chevrolet, from which they ultimately recovered a handgun. (Defs. St. ¶ 12.) Meanwhile, Mr. Reed reached for the lever of the police car's door, opened it, and fled on foot. (Defs. St. ¶ 5.) Mr. Reed found an abandoned car and hid in its back seat area for approximately 25-30 minutes until the officers found him. (Defs. St. ¶ 6.) When defendant officers found Mr. Reed, they pulled him from the abandoned vehicle and again placed him under arrest (referenced hereinafter as the "second arrest"). (Defs. St. ¶ 9.)

The parties dispute whether Mr. Reed remained handcuffed behind his back during his escape and hiding. Defendant officers contend that, although Mr. Reed was handcuffed behind his back during his initial arrest, when they found him in the abandoned vehicle Officer Sarabia "saw that the handcuffs were now in front of the plaintiff." (Defs. St. ¶ 22.) Defendant officers contend that Officer Sarabia then unlocked one of Mr. Reed's handcuffs and relocked them behind Mr. Reed's back. (Defs. St. ¶ 23.) Mr. Reed contends that he was handcuffed behind his back during his first arrest and remained so during his escape and the entirety of the second arrest. (Pl. St. ¶ 10.)

The parties also dispute whether Mr. Reed resisted the second arrest. Defendant officers contend, without any additional detail, that Mr. Reed "fought with" them during the second arrest. (Defs. St. ¶ 24.) Mr. Reed denies fighting with the officers (Pl. Resp. to Defs. St. ¶ 24) and states that "[a]t no point [did he] punch, kick, or grab any of the Officers." (Pl. St. ¶ 9.)

Finally, the parties dispute the degree of force used in the second arrest. Mr. Reed contends that Officer Sarabia sprayed mace all over his body and lifted his pants and undergarments to spray mace on his bare genitals. (Pl. St. ¶¶ 12-13.) Mr. Reed contends that the mace burned his genital area, and that after he was transported to jail and placed in a cell, he drenched his shirt in toilet water and used that in an attempt to wash the mace off. (Pl. St. ¶¶ 15-16.) Mr. Reed also contends that while Officer Sarabia sprayed mace, Officer Wrigley repeatedly beat Mr. Reed with a police baton. (Pl. St. ¶ 14.) Defendant officers concede that they used mace to subdue Mr. Reed, but deny spraying mace on Mr. Reed's bare genital area or beating him with the baton. (Defs. Resp. to Pl. St. ¶¶ 12-16).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether factual issues exist, the court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

Rule 56 mandates, however, that the party opposing a motion for summary judgment may not rest on the pleadings or mere speculation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). It must instead affirmatively demonstrate, through the presentation of admissible evidence, that there is a genuine issue of material fact to be resolved at trial. *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). If there is a genuine dispute as to a material fact, the court must view the relevant evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

### III. ANALYSIS

Mr. Reed claims that Officers Sarabia and Wrigley violated his Fourth Amendment rights by using excessive force during the second arrest. The officers have moved for summary judgment, arguing that the use of force was "inherently reasonable."

Even when a police officer has probable cause to execute an arrest, he or she may still commit an unreasonable seizure under the Fourth Amendment "if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009) (internal quotation marks omitted). Excessive force claims are reviewed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). The court must examine the "totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). The nature and extent of the force that may reasonably be used to

4

effectuate an arrest depends on the specific circumstances of the arrest, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Understanding that law enforcement officers must make critical, split-second decisions in difficult and potentially dangerous situations, courts assess the reasonableness of the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Once the relevant events have been established—either at trial or through submission of undisputed facts—the question of whether an officer's actions were objectively reasonable is a legal determination, rather than a jury determination. *Bell v. Irwin*, 321 F.3d 637, 640-41 (7th Cir. 2003).

In this case, there is conflicting evidence about the nature and extent of the force used and the extent to which Mr. Reed resisted his second arrest. Defendant officers claim that Mr. Reed fought them during his second arrest and needed to be re-handcuffed behind his back, which exposed the officers to a substantial risk of harm. They also contend that, although they used mace, they used only the amount necessary to subdue Mr. Reed. They deny spraying his bare genital area and beating him with a police baton. Mr. Reed presents a very different version of the events. He contends that he remained handcuffed behind his back and did not resist the arrest. He also contends that the officers used substantial force in a punitive manner—pulling down his pants and undergarments to spray mace on his bare genitals and beating him with a baton—while he lay compliantly first in the back of the car and then on the ground. These are key factual disputes, which are not susceptible to resolution on summary judgment. *Cyrus v.*

5

*Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) (reversing summary judgment where parties presented substantially divergent evidence about the nature of force used and the extent of plaintiff's resistance of arrest).

Defendant officers appear to argue that, even accepting Mr. Reed's version of the events as true, they cannot be found to have used excessive force because Mr. Reed was evading arrest and had previously been observed with a handgun. The court rejects that notion. Although the use of mace has been held to be inherently reasonable in cases involving a suspect who is physically resisting arrest, it has also been held unreasonable when used excessively or without provocation. *Brooks v. City of Aurora*, 653 F.3d 478, 486-87 (7th Cir. 2011) (citing cases). That makes sense of course, because force is reasonable only when exercised in proportion to the threat posed. *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (reasoning that although a single taser shock may have been justified, repeated taser shocks were grossly disproportionate to any threat posed and unreasonable under the circumstances). Moreover, the use of force against a suspect who is already subdued may be deemed punitive in nature, and therefore unreasonable. *See, e.g.*, *Gregory v. Oliver*, 226 F. Supp. 2d 943, 950 (N.D. Ill. 2002) (leg sweep by an officer on a handcuffed suspect was excessive force); *Taylor v. Kveton*, 684 F. Supp. 179, 185 (N.D. Ill. 1988) ("[N]o reasonable officer would have believed that his actions in kicking an unresisting [plaintiff] . . . were lawful under the Fourth Amendment reasonableness standard.").

Accepting Mr. Reed's version of the events as true (which the court must do at this stage of the litigation), a jury in this case could reasonably conclude that defendant officers repeatedly beat Mr. Reed with a police baton and pulled down his pants and

underwear so they could spray mace on his bare genitals. A jury could also conclude that, from the perspective of a reasonable officer on the scene, Mr. Reed did not present a substantial threat because he was already handcuffed behind his back and he did not resist the arrest. Finally, a jury could conclude that defendant officers' actions were punitive in nature because Mr. Reed was subdued at the time.[1] Those factual findings would support a ruling in Mr. Reed's favor on his excessive force claim. Accordingly, the court cannot grant defendants' motion for summary judgment.

## IV. CONCLUSION

For the above reasons, the court denies Officers Sarabia and Wrigley's motion for summary judgment.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 1, 2012

---

[1] Defendant officers' motion for summary judgment makes a passing reference to the concept of qualified immunity. (Defs.' Mem. in Supp. Mot. for Summ. J. 6, ECF No. 65.) If defendant officers intend to argue that they are entitled to qualified immunity because the unlawfulness of their conduct was not apparent in light of pre-existing law, the court notes that it cannot grant summary judgment on that basis because a jury could conclude that defendant officers' conduct was punitive in nature or otherwise unreasonably disproportionate to the threat posed. In that event, the officers would not be entitled to qualified immunity. *See, e.g.*, *Gregory v. Oliver*, 226 F. Supp. 2d 943, 950 (N.D. Ill. 2002); *Taylor v. Kveton*, 684 F. Supp. 179, 185 (N.D. Ill. 1988). Because factual questions remain concerning the nature of the force and Mr. Reed's resistance, the court cannot yet rule on the qualified immunity issue. *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987).